NUNC PRO TUNC AS OF 2-7-05

FILED
CLERK, U.S. DISTRICT COURT
JUL - 8 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| KOREAN INDEPENDENCE HISTORICAL ASSOCIATION, INC., a California corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>YONSEI UNIVERSITY, a South Korean entity,<br><br>  Defendant. | Case No. CV 05-995 WMB (PJWx)<br><br>**FINAL JUDGMENT** |

Plaintiff Korean Independence Historical Association, Inc.'s ("KIHAI") motion for order confirming arbitration award and entry of judgment in conformity therewith, a copy of which is attached hereto as Exhibit A, coming on properly before the Court, no response being required from Defendant Yonsei University ("Yonsei"), and the Court previously affirming the arbitration award;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that effective April 14, 2005, the January 17, 2005, Arbitration Award is affirmed as the Final Judgment in this matter.

Dated: JUL - 8 2010

_____
Hon. A. HOWARD MATZ
ACTING CHIEF JUDGE
United States District Court Judge

CHRISTIE, PARKER & HALE, LLP

**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

CHRISTIE, PARKER & HALE, LLP

1 | Hon. Melinda A. Johnson (Ret.)
  | JAMS
2 | 707 Wilshire Blvd.
  | 46th Floor
3 | Los Angeles CA 90017
  | 213 620 1133
4 | 213 620 0100

SUPERIOR COURT FOR THE SATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KOREAN INDEPENDENCE HISTORIAN ASSOCIATION INC.<br>    Claimant,<br><br>vs.<br><br>YONSEI UNIVERSITY.<br>    Respondent. | JAMS Ref. No. 1220031131<br><br><br><br>**AWARD** |

On December 13 and 14, 2004, an arbitration was conducted on Claimant Korean Independence Historical Association's (hereafter KIHAI) claim for breach of contract and fraud against Respondent. Respondent Yonsei University (hereafter, Yonsei) had participated somewhat, albeit reluctantly, in the arbitration process, including a Case Management conference call on September 22, 2004, at which time it agreed to obtain a location from which it could appear for arbitration by video conference. Although Yonsei had raised jurisdictional issues before the appointment of this arbitrator, it raised no objections to the proceedings during that call. However, on November 15, 2004 Yonsei informed JAMS that it would not be participating because the arbitrator "...based on our finding from her way of reasoning and fact-finding...that she lacks background and experience in international legal matters." It also stated "her way of

1

EXHIBIT A
PAGE 3

handling certain initial matters... deepened our concern about her background and experience." Such rather general concerns were not raised during the conference call and Yonsei did not describe what "...reasoning and fact-finding..." or "...way of handling certain initial matters..." referenced. To the arbitrator's knowledge, Yonsei took no action in the Superior Court to remove the arbitrator as being unqualified under the parties' agreement.

As Yonsei declined to thereafter participate, though it was specifically noticed of the time and place of the arbitration, only KIHAI's representative, David Hyun and his counsel Thomas J. Daly, Esq. and Brian L. Yates, Esq., both of Christie Parker Hale LLP appeared.

Considering the two days of oral testimony, exhibits 1 through 32 and a copy of the volume produced by Yonsei, the arbitrator makes the following findings of facts and renders the following award:

Findings of Fact:

KIHAI's chairman and sole officer David Hyun (hereafter Hyun) has substantial written material prepared by his father Soon Hyun (hereafter Rev. Hyun) a Korean Methodist minister most active during the first half of the 20th century. These writings reflect a view of the Korean struggle for independence from the Japanese that is quite different from conventional teaching. In particular, the material is critical of Syngman Rhee and amplifies the roles of Rev. Hyun and other ministers (and one pharmacist) in the mobilization of the Korean people to overthrow the Japanese. For many years Hyun has sought an appropriate publisher of his father's autobiography. It can safely be called the primary mission of his life.


EXHIBIT A
PAGE 4

In 1997 Robert Kim (hereafter Kim), an historian at the University of Western Washington approached Hyun and offered to put him in touch with Yonsei, which various witnesses described as the "Harvard of Korea." Given its prominence and worldwide reach, it would be the perfect publisher for this book.

There is considerable circumstantial evidence that Kim was operating as an agent of Yonsei and worked in concert with it to prevent an appropriate publication, even though Hyun was paying Kim for his efforts. Certainly Kim's contact with Hyun put an end to the efforts to locate another publisher. And, once the original publication contract was signed in August, 1998, Yonsei, through the professor assigned to the endeavor, Young Ick Lew, communicated with Robert Kim rather than Hyun, not even copying Hyun on correspondence.

The original contract itself is evidence that Yonsei never intended a viable publication. It is very odd for a university press to agree to publish an autobiography, exactly as presented, even to the point of abdicating the right to correct spelling and grammatical errors. And, although some note by Hyun might not have been unusual, to have the son of the subject of the autobiography write the foreward is, as Yonsei later complained, not scholarly. The contract itself begs the inference that this was an attempt to prevent publication of a view not sympathetic to conventional wisdom.

Such as it was, the publishing process before the first agreement gave way to the second, also strongly suggests sabotage. By February, 1999, Young Ick Lew was refusing to comply with the terms of the agreement, stating he did not have adequate budget to abide by Hyun's wishes (and the contract's requirements) and did not intend to include Hyun's introduction. Although, as Director of Modern Korean Studies, Young Ick Lew's position made him the

EXHIBIT A
PAGE 5

obvious choice to head this project, Yonsei knew -- and Hyun did not know -- that Young Ick Lew had written a sympathetic biography of Syngman Rhee and, so, was clearly not the necessarily unbiased person to shepherd a project meant to honor Rev. Hyun.

Eventually, the "stalling" became obvious to Hyun and he filed suit against Yonsei in March, 2001, thirty-one months after the contract had been signed. Despite "fast track" rules in civil litigation, the matter remained in the courts until a mediation in September, 2002, eighteen months after the suit had been filed. Though still distrustful of Yonsei, Hyun was now a man in his eighties, had spent a considerable sum of money since being solicited by Yonsei through Kim, and had lost the comfort of his immediate family for putting so much of his time and energy into this book. Hoping Yonsei would honor an agreement signed by the President of the University, he agreed to a more detailed contract with Yonsei, giving them six months from the receipt of the manuscript to publish, rather than beginning anew the search for a publisher from.

Yonsei then turned to different tactics. In March, 2003, Hyun sent the manuscript on a disc, unaware that the process had introduced errors that would be obvious upon printing. Instead of notifying Hyun of this, Yonsei offered him vague reassurances without ever responding to his frequent and specific questions, about page size, paper type, the date galley proofs would be forthcoming, etc. Joongi Kim, Yonsei's attorney wrote "we will review the material," "we are still engaging in a meticulous review," and "we have not found any '"serious uncorrectable deficiency."'

Without ever sending Hyun galley proofs from which the correctable errors could have been discovered and repaired Yonsei sent him what they apparently considered the finished book, with a cover letter saying they had fulfilled the contract. They had not.


EXHIBIT A
PAGE 6

1    Galley proofs are not mentioned in the contract, but are so commonplace in the
2    publishing industry as to be understood without mention. By failing to inform Hyun of the
3    errors, through the medium of the galley proofs, while reassuring him that they were reviewing
4    the materials <u>for</u> errors Yonsei acted deliberately and in bad faith. It asserts through its
5    correspondence that it was required to print the manuscript exactly as Hyun presented it, which is
6    only a partially correct reading of the contract. And, if they ever truly believed that were the
7    case, why "meticulously" review it at all?

9    Even if that were a correct reading of the agreement, Yonsei did not perform. It
10   misspelled the word "Reverend;" it compressed material; it duplicated a page and used it to fill in
11   a page the disc made to appear blank. Additionally Yonsei published the book in a type fact too
12   light to read. In short, they deliberately created a book any reasonable person would find
13   unacceptable, such that they would not have to comply with their distribution obligations under
14   the contract.

16   Yonsei has breached the 2002 agreement in many respects including, but not limited to
17   those listed above. Additionally, the arbitrator finds it entered into that agreement, inducing
18   Hyun to waive all existing claims he had against it, fraudulently and in bad faith, and in a now
19   apparent effort to continue to delay publication of Reverend Hyun's autobiography.

21   As Hyun was fraudulently induced to sign the September, 2002 agreement, the waiver of
22   claims therein is hereby set aside, and Hyun may claim damages for breach of contract and fraud
23   dating back to September, 1998.

Damages:

1.    The 2002 contract calls for $75,000 liquidated damages, in addition to any specifically provable damages.

2.    Spending his time dealing with Yonsei's machinations instead of productively, with a legitimately interested publisher, Hyun took time from his gainful employment as an architect. Although he could have billed at a substantially higher rate in his chosen profession, he has asked only to be compensated the reasonable value of his services as an author, editor, represetive of KIHAI, etc. Damages shall include 32 hours per week, from August, 1998 through December, 2004 at $50 per hour for a total of $533,867.

3.    Although the contracts do not contain an attorney fee clause, the fraud cause of action supports attorneys' fees as an element of damages. Total fees through the arbitration itself are awarded in the amount of $123,145. This amount includes costs, except for the JAMS arbitration fees.

4.    By the time of the arbitration Hyun had incurred $13,900 in fees to JAMS. This should be adequate to cover the post-arbitration period, and is awarded as furthr damages.

5.    Hyun paid Kim $12,500 as a consultant and to assist in writing materials for the autobiography. For the reasons discussed above, he is entitled to recover this amount from Yonsei. Additionally he paid Yong Mok Kim $25,060, following the signing of the 2002 contract to write the additional materials, and this shall be an element of damages.

EXHIBIT A
PAGE 8

6. The primary function of KIHAI for the last seven years has been to secure the publication of Rev. Hyun's materials. Hyun has had to have an assistant during that period of time and claims $1000 a month, much less than the full cost of maintaining KIHAI. That amount is awarded from the signing of the original contract to the date of the arbitration, in an amount of $77,000.

7. Finally, Hyun has asked for punitive damages. Applying the Civil Code 3294 test, the arbitrator finds respondent's actions to have been fraudulent and deliberate. Given Hyun's age, one can infer Respondent was simply hoping to outlast him, assuming no one else would take up the cudgel after his death. Instead, Respondent has caused a happily married and prosperous father to suffer the severe emotional distress of the end of his marriage, the alienation of his child, the spending down of his life's savings, and the incurring of substantial debt in the straightforward and worthy effort to honor his father's life. Respondent appeared to encourage him in this effort, all the while undermining it. Hyun lost business opportunities and travel opportunities. Given Yonsei's position, the very fact he is in a dispute with the university has lowered the esteem with which he was held by the local Korean community. Hyun is a man at an age at which he should be able to retire happily and peacefully with his family, and Yonsei has now forced him into a lengthy legal battle, which will have to be followed by continued efforts to publish this volume, an effort which he will no doubt continue until the end of his days.

The non-punitive damages awarded total $860,472. Although KIHAI presented evidence that Yonsei's net worth was at least $1.3 billion, and asked that it be made to "feel the pain," the arbitrator is mindful of recent United States Supreme Court case law suggesting appropriate parameters for punitive damages.

EXHIBIT A
PAGE 9

Yonsei is a University. It's first obligation should be to disseminate the truth. For seven years it engaged in a singular effort to suppress information which might challenged the official version of the "truth." It has disregarded its academic responsibilities and made life miserable for one man. The arbitrator awards 1% of its reported net worth as of year end 2003, or $12,370,000 as punitive damages.

DATED: January 17, 2005

Hon. Melinda A. Johnson, Ret.
Arbitrator

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 707 Wilshire Blvd., 46th Floor, Los Angeles, California, 90017.

On January 18, 2005, I served the attached **AWARD** on the interested parties in the within action entitled **Ref# 1220031131 - Korean Independence Historical Association, Inc. vs. Yonsei University** by placing the true copy(ies) thereof enclosed in a sealed envelope addressed as follows:

Thomas J. Daly Esq.
Christie, Parker & Hale
350 W. Colorado Blvd.
Suite 500
Pasadena, CA 91105-7068
Tel: (626) 795-9900
Fax: (626) 577-8800

Brian L. Yates Esq.
Christie, Parker & Hale
350 W. Colorado Blvd.
Suite 500
Pasadena, CA 91105-7068
Tel: (626) 795-9900
Fax: (626) 577-8800

Yoong-Neung Kee Esq.
Yoon & Yang
23rd Floor, ASEM Tower
159-1 Samsung-Dong, Gangnam-Gu
Seoul 135-798,   Korea
Tel: 82-2-6003-7000
Fax: 82-2-6003-7800

[ X ]  BY U.S. MAIL         I deposited such an envelope in the mail at Los Angeles, California, with postage thereon fully prepaid.

[ X ]  BY FAX               I caused such documents to be faxed to the above-mentioned address(es).

[ ]  BY MESSENGER           I caused such envelope to be messengered to the above mentioned address(es).

[ ]  BY PERSONAL            I caused such envelope to be delivered by hand to the offices of the SERVICE address(es).

[ X ]  STATE                I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[ ]  FEDERAL                I declare that I am employed in the office of a member of the bar of this Court whose direction the service was made.

Executed on January 18, 2005 at Los Angeles, California.

OLYMPHIANE SMITH



EXHIBIT A
PAGE 11